# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MICKEY THOMPSON, as personal Representative of the Estate of Charles T. Thompson, MICKEY THOMPSON and CHARLES COREY THOMPSON, <br><br> Plaintiffs, <br><br> v. <br><br> TRW AUTOMOTIVES U.S. LLC, <br><br> Defendant. | NO. 3:15-cv-01033 <br> JUDGE CAMPBELL |

## MEMORANDUM OPINION

Before the Court is unnamed defendant BITCO General Insurance Corporation's "Motion to Dismiss" which, by its terms, was filed "pursuant to . . . Rules 12(b)(6) and 56." (Doc. No. 30, at 1.) For the reasons set forth herein, the Court will grant the motion.

### I.    PROCEDURAL BACKGROUND

Plaintiffs Mickey Thompson, as personal representative of the estate of Charles T. Thompson, Mickey Thompson in his personal capacity, and Charles Corey Thompson originally filed this action on August 24, 2015 in the Circuit Court for Rutherford County, Tennessee. The action was removed to federal court on the basis of diversity jurisdiction.

Plaintiffs filed a First Amended Complaint in this Court on October 23, 2015, naming as the sole defendant TRW Automotive U.S. LLC ("TRW") (Doc. No. 15). In their complaint, Plaintiffs assert that a defective steering gear manufactured and sold by TRW, and installed on a vehicle being driven by Charles T. Thompson ("Decedent") during the course and scope of his employment with

Hoover, Incorporation ("Hoover"), resulted in the wrongful death of the Decedent on August 28, 2014.

Plaintiffs also served the original and amended complaints on unnamed defendants BITCO General Insurance Company ("BITCO") and BITCO National Insurance Company ("BITCO National"), apparently on the basis that the vehicle being driven by the Decedent at the time of the accident that resulted in his death was insured by one or both of these insurers through a policy issued to Hoover. The parties later stipulated to the dismissal of BITCO National. The only two defendants, named or unnamed, remaining in the action are TRW and BITCO.

BITCO filed an Answer to the Amended Complaint and then the pending Motion to Dismiss. It acknowledges in its Memorandum of Law (Doc. No. 43-2) in support of the motion that, because it relies upon the policy of insurance covering Hoover, the motion must be treated as one for summary judgment under Rule 56. In conjunction with its motion and supporting memorandum, BITCO filed a Statement of Undisputed Facts (Doc. No. 43-1), the affidavit of BITCO's Regional Claims Manager (Doc. No. 33), and a copy of the insurance policy at issue (Doc. Nos. 34–42).

Plaintiffs do not object to treating the motion as one for summary judgment. Instead, they ask the Court to deny the motion or, alternatively, to hold it in abeyance pending the conclusion of discovery. (Doc. No. 52, at 1.) Plaintiffs filed their response in opposition to BITCO's motion (Doc. No. 53), the affidavit of accident reconstructionist KD Smith (Doc. No. 53-1), their response to BITCO's statement of undisputed facts, and their own statement of undisputed facts (Doc. No. 54). BITCO filed its response to Plaintiffs' statement of additional facts (Doc. No. 59) and a reply brief (Doc. No. 61).

## II. FACTUAL BACKGROUND

The facts set forth herein are undisputed for purposes of BITCO's motion, unless otherwise indicated. These facts include those set forth in the parties' statements of undisputed facts that are not contested by the other party, as well as the allegations in Plaintiffs' complaint, which are not contested by BITCO for purposes of its hybrid motion to dismiss/motion for summary judgment.

On Tuesday, August 26, 2014, an automobile accident ("Accident") involving Plaintiffs' Decedent, Charles T. Thompson, took place on I-24 in Rutherford County, Tennessee, near mile marker 72. The Decedent was operating a 2015 Freightliner dump truck in the course and scope of his employment with Hoover; the dump truck was owned and maintained by Hoover.

At the time of the Accident, the Decedent was traveling in lane 3 of I-24, eastbound. Plaintiffs assert "upon information and belief" that "an unidentified white SUV occupying lane 4 attempted to and/or made a maneuver to occupy lane 3," in which Decedent was traveling. (Am. Compl. ¶ 8.) In response, Decedent "made a counter move to the left to avoid hitting the white SUV which resulted in him occupying a portion of lane 2." (Doc. No. 15, Am. Compl. ¶ 9.) Lane 2, however, was occupied by a vehicle driven by Michael Bartlett. When Decedent saw that a vehicle was already in lane 2, he moved back into lane 3 to avoid hitting that vehicle.

As Decedent moved "suddenly and without warning" back to the right, "the sector shaft in the dump truck's driver's side TRW THP 60 stearing gear broke at the pivot arm and he lost control of the dump truck, swerved [and] rolled over into the median." (Am. Compl. ¶ 11.) Bartlett's vehicle collided with dump truck and came to rest in the median. Bartlett did not suffer serious injuries, but Decedent suffered serious injuries that resulted in his death two days later, on August 28, 2015. (Am. Compl. ¶¶ 12–14.)

The Amended Complaint contains no further allegations regarding the white SUV and instead ascribes the cause of the Accident and Decedent's injuries and death to defects in the design and manufacture of the TRW THP60 steering gear. (See Am. Compl. ¶ 24 ("Charles T. Thompson's injuries and death are a direct and proximate result of the dump truck's driver's side TRW THP60 stear gear flaws and defects.").) Neither the original nor the Amended Complaint named as a defendant the "John Doe" driver of the white SUV. Plaintiffs never procured a summons for "John Doe." The Amended Complaint does not allege that negligence on the part of the driver of the white SUV proximately caused or contributed to the Accident. Plaintiffs have, to date, not filed a motion to amend their complaint to assert the negligence of the driver of the white SUV. Instead, Plaintiffs seek recovery from defendant TRW on the basis that it designed, manufactured and sold the TRW THP60 steering gear.

Plaintiffs nonetheless served the complaint upon BITCO, presumably on the basis that BITCO insured the dump truck. In that regard, there is no dispute that the dump truck in question was insured under BITCO Policy #CAP 3593197 (the "Policy"), purchased by Hoover and naming Hoover as the insured. In support of its motion, BITCO submits the affidavit (Doc. No. 33) of Keith Baker, Regional Claims Manager for BITCO. The Policy is attached as an exhibit (or several exhibits) to Baker's affidavit. Baker does not purport to interpret the Policy or describe the circumstances of its issuance. He simply attests that he is "privy to all policies of insurance issued by [BITCO] . . . to its Tennessee insureds," that the Policy was in effect at the time of the Accident, and that the copy of the Policy attached to his affidavit is true, correct and complete. (Id. ¶ 3.) Plaintiffs do not contest the authenticity and completeness of the Policy as filed and relied upon by BITCO. Plaintiffs instead state that, because of personal matters affecting one of their attorneys, they

4

have not had the opportunity to depose Keith Baker "regarding the insurance coverage and terms." (Doc. No. 54, at 2.)

BITCO did not plead comparative fault in its Answer to the Amended Complaint, but it denied liability and relied on "all exclusions, limitations, defenses and offsets" in the Policy. (Doc. No. 19, at 4.)

The Tennessee Uninsured Motorists Coverage endorsement ("Tennessee UM Endorsement") is the Policy clause pertaining to uninsured motorist ("UM") coverage. The Tennessee UM Endorsement provides that BITCO

> will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured", or "property damage" caused by an "acccident". The owner's or driver's liability for these damages must result from the owenrship, maintenance or use of the 'uninsured motor vehicle".

(Policy, Tenn. UM Endorsement at 2, ¶ A.1, Doc. No. 38-1, at 12.)

> The UM Endorsement defines "uninsured motor vehicle" in pertinent part as:
> 
> a land motor vehicle or "trailer" . . . [f]or which neither the driver nor owner can be identified. The vehicle or "trailer" must either:
> 
> > (a) Hit an "insured", a covered "auto" or a vehicle an insured is "occupying"; or
> > 
> > (b) Cause "bodily injury" or "property damage" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying".
> 
> If there is no physical contact with such vehicle or "trailer", the facts of the "accident" must be proven by clear and convincing evidence. We will only accept corroborating evidence of the claim other than the evidence provided by occupants in the covered "auto" or in the vehicle an "insured" is "occupying".

(Id. at 5–6, ¶ F.2.c(4), Doc. No. 38-1, at 15–16.)

5

**III. STANDARD OF REVIEW**

BITCO filed its motion under Rule 12(b)(6) and Rule 56. A Rule 12(b)(6) motion filed after the defendant files its answer is technically untimely. See Williams v. State Farm Ins. Co., 781 F. Supp. 2d 519, 522 (E.D. Mich. 2011) ("[A] post-answer Rule 12(b)(6) motion is untimely and . . . some other vehicle, such as a motion for judgment on the pleadings . . . must be used." (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)). The Sixth Circuit Court of Appeals has treated post-answer Rule 12(b)(6) motions as requests for the entry of judgments on the pleadings under Rule 12(c). See, e.g., Satkowiak v. Bay Cnty. Sheriff's Dep't, 47 F. App'x 376, 377 n.1 (6th Cir. 2002). Moreover, Rule 12(h)(2) provides that a contention by the defense that the plaintiff failed to state a claim upon which relief can be granted "may be raised . . . by a motion under Rule 12(c)." The Court therefore construes the motion as filed, in part, under Rule 12(c), the standard of review for which is the same as that for evaluating a motion under Rule 12(b)(6). Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010).

That is, the Court must accept the plaintiff's well pleaded allegations as true and construe each of them in a light that is most favorable to the plaintiff. Bennett v. MIS Corp., 607 F.3d 1076, 1091 (6th Cir. 2010). This assumption of truth does not extend to the plaintiff's legal conclusions. The complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." Bishop v. Lucent Techs., Inc., 520 F.3d 516, 519 (6th Cir. 2008) (citation and internal quotation marks omitted).

BITCO also invokes Rule 56 and has presented and relies upon matters outside the pleadings, namely the Policy and the affidavit attesting to its authenticity. The federal rules require that if, on a 12(b)(6) or Rule 12(c) motion to dismiss, "matters outside the pleadings are presented to and not

excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

In this case, BITCO clearly gave notice that it intended to file its motion under both Rule 12 and Rule 56 and that it was relying on matters outside the pleadings. (Doc. No. 30, at 1.) BITCO also complied with the local rule governing the filing of motions for summary judgment by filing a separate statement of undisputed material facts. As set forth above, Plaintiffs filed their response to BITCO's statement and submitted their own statement of additional facts, to which BITCO responded. In sum, the record is clear that Plaintiffs had notice that the motion would be treated as one for summary judgment, had the opportunity to present all material relevant to the motion, and will not be prejudiced if the Court exercises its discretion to treat the motion as one for summary judgment.

Under Rule 56(a), summary judgment is appropriate if the movant "shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." In reviewing a summary judgment motion, this Court views the evidence and reasonable inferences therefrom "in the light most favorable to" the non-moving party. Binay v. Bettendorf, 601 F.3d 640, 646 (6th Cir. 2010) (internal quotation marks omitted); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### IV. DISCUSSION

#### A. The Motion and Response

In its motion, BITCO asserts that it is entitled to judgment in its favor on the basis that (1) Plaintiffs fail to allege facts suggesting that the white SUV ever came in physical contact with the

7

dump truck driven by the Decedent or showing that the white SUV actually exists, as required by Tenn. Code Ann. § 56-7-1201(e) and the Policy; (2) Plaintiffs did not bring suit against a "John Doe" defendant or "issue a John Doe warrant against the unknown owner or operator" as required by Tenn. Code Ann. § 56-7-1206(b) for purposes of obtaining coverage under BITCO's UM Endorsement; (3) Plaintiffs do not allege that the Accident was caused by the negligence, comparative or otherwise of the driver of the white SUV; and (4) the one-year statute of limitations has now run on any action against a John Doe defendant, thus precluding Plaintiffs from amending their complaint to state a John Doe claim.

In response, Plaintiffs reaffirm that their claims are "for defective product and negligence against TRW." (Doc. No. 53, at 7.) They assert that (1) Plaintiffs' theory of recovery against BITCO is based on Tenn. Code Ann. § 56-7-1206(**a**) and the Policy, not § 56-7-1206(**e**) [sic[1]]; (2) under § 56-7-1206(a), according to Plaintiffs, "the unnamed UM carrier would either step in the shoes of a Defendant or act in a role of representing themselves should the liable named Defendant not have coverage or have sufficient coverage. . . . Tennessee law merely requires the Plaintiffs to issue a summons and have the Defendant properly served" (Doc. No. 53, at 8); (3) BITCO failed to state an affirmative defense of comparative fault or a "John Doe" defense in its answer and has therefore waived such defenses; (4) Plaintiffs do not now and have never intended to sue John Doe; (5) Plaintiffs' UM claims are not barred by the statute of limitations; and (6) BITCO's motion should be denied because it is too early to allocate responsibility among the defendants.

As set forth below, the Court finds that Plaintiffs' arguments are without merit and that

---

[1] The Court presumes that Plaintiffs intended to refer to § 56-7-1201(e), upon which BITCO relies, rather than § 56-7-1206(e).

BITCO is entitled to judgment in its favor as a matter of law.

### B. The Statutory Framework

Uninsured-motorist ("UM") insurance coverage is regulated by statute in Tennessee. Tenn. Code Ann. §§ 56-7-1201 through -1206 (the "UM statute"). The purpose of UM insurance, and the UM statute, is "to protect individuals who sustain injuries caused by uninsured motorists who cannot respond in damages." Estate of Kirk ex rel. Kirk v. Lowe, 70 S.W.3d 77, 80 (Tenn. Ct. App. 2001).

Under § 56-7-1206(a), "[a]ny insured intending to rely on the coverage required by this part," that is, the UM statute, must, if the insured files a lawsuit against the owner or operator of an uninsured vehicle, "serve a copy of the process upon the insurance company issuing the [uninsured-motorist] policy . . . as though the insurance company were a party defendant." Although the complaint must not actually name the insurance company as a defendant, the insurance company, acting as an unnamed defendant, thereafter has "the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its own name." Id.

The UM statute has never authorized an insured to bring suit directly against a UM carrier when the identity of the uninsured motorist was known, but Tennessee courts construed a prior version of the UM statute as permitting a direct action against an insurance carrier when the identity of the uninsured motorist was not known. Estate of Kirk, 70 S.W.3d at 80–81 (citing Glover v. Tenn. Farmers Mut. Ins. Co., 468 S.W.2d 727 (Tenn. 1971), and Story v. So. Fire & Cas. Co., 532 S.W.2d 277 (Tenn. Ct. App. 1975)). In Story, a hit-and-run case in which the identity of the person who caused the accident was never discovered, the court permitted a direct action against the injured plaintiff's UM carrier. In doing so, the court noted that there was "good reason to advocate" a "'John

9

Doe' procedure" for serving an unidentified motorist but determined that such a procedure should be initiated by the state legislature. Story, 532 S.W.2d at 285.

And that is what happened. In 1984, the Tennessee legislature amended the UM statute to provide for situations in which the motorist causing an injury is unknown. The "John Doe" procedure has now been codified as follows:

> If the owner or operator of any motor vehicle that causes bodily injury or property damage to a person insured under this part is unknown and if the insured satisfies all of the requirements of § 56-7-1201(e), should suit be instituted, *the insured shall issue a John Doe warrant against the unknown owner or operator in order to come within the coverage of the owner's uninsured motorist policy*. . . .

Tenn. Code Ann. § 56-7-1206(b) (emphasis added). "The purpose of Tenn. Code Ann. § 56-7-1206(b) is to provide a uniform process for bringing suit when the identity of an uninsured motorist is unknown, so as to conform with the procedure where the identity of the insured motorist is known." Estate of Kirk, 70 S.W.3d at 81 (citations omitted). The procedure is mandatory, and Tennessee courts typically dismiss any suit brought against a UM carrier if the plaintiff does not name a "John Doe" defendant in the complaint and issue a John Doe "warrant" in accordance with the statute and Tennessee law generally. See, e.g., Gray v. Nationwide Mut. Ins. Co., Shelby Law No. 65, 1989 WL 11739, at *2 (Tenn. Ct. App. Feb. 15, 1989) ("Where the uninsured motorist's identity is known, suit must be brought against him. Where the identity is unknown, it must be brought as a John Doe action."); Lewis v. Memphis Fire Ins. Co., No. C/A 1108, 1987 WL 14291, at *2 (Tenn. Ct. App. July 21, 1987) (affirming the trial court's dismissal of the complaint where plaintiff alleged that he was struck and injured by a hit-and-run driver and sued his insurance company directly, in its own name, rather than naming "John Doe" as a defendant in accordance with § 56-7-1206(b)).

In addition, even if the plaintiff has complied with the procedures required by subsections (a) and (b) of § 56-7-1206, to recover against the UM carrier, the plaintiff must also meet the requirements of § 56-7-1201(e), which states in pertinent part:

> (e) If the owner or operator of any motor vehicle that causes bodily injury or property damage to the insured is unknown, the insured shall have no right to recover under the uninsured motorist provision unless:
>
> (1)(A) Actual physical contact has occurred between the motor vehicle owned or operated by the unknown person and the person or property of the insured; or
>
> (B) The existence of the unknown motorist is established by clear and convincing evidence, other than any evidence provided by occupants in the insured vehicle . . . .

Tenn. Code Ann. § 56-7-1201(e)(1).

### C. Application

As an initial matter, the Court rejects BITCO's primary argument—that it cannot be liable because Plaintiffs have not established that physical contact occurred between the white SUV and the Decedent's dump truck or established by clear and convincing evidence that the white SUV exists, as required by the Policy's UM Endorsement and by § 56-7-1201(e). At this stage, when discovery has not yet been completed, Plaintiffs' allegations in the complaint and the affidavit of KD Smith are sufficient to establish at least a question of act as to the existence of the white SUV.

It is apparent, however, that the existence of the white SUV is completely irrelevant to Plaintiffs' claims. Plaintiffs insist that they fully complied with § 56-7-1206(a) by serving a summons and complaint upon BITCO and therefore that they complied with their obligations under the UM statute. They assert that it was not necessary for them to follow the John Doe procedure prescribed by § 56-7-1206(b) because they do not intend and have never intended to sue a "John Doe" defendant or to assert negligence on the part of the driver of the white SUV.

11

The first problem with this position is that, as set forth above, compliance with § 56-7-1206(b) is not optional. Naming an uninsured motorist in the complaint—either by name or as a John (or Jane) Doe—is a condition precedent to establishing the liability of a UM carrier. See Lewis, 1987 WL 14291, at *2 ("Since the Plaintiff in the case at bar failed to comply with the mandate of the statute [§ 56-7-1206(b)], the trial court properly dismissed the complaint."). Plaintiffs' admitted failure to comply with § 56-7-1206(b), standing alone, is sufficient to justify dismissal of their claim against BITCO.

The second problem with Plaintiffs' position is that a UM carrier, as an unnamed defendant in a lawsuit, essentially steps into the shoes of the uninsured motorist and, thus, can be liable only to the extent that the uninsured motorist is liable. Sherer v. Linginfelter, 29 S.W.3d 451 (Tenn. 2000) (noting that Tennessee's UM statute "limits the liability of an uninsured motorist carrier to payments for damages caused by the uninsured/underinsured motorist in the ownership, maintenance, or use of the vehicle"). BITCO'S UM Endorsement also spells out this principle, as set forth above: "We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle'." (Policy, Tenn. UM Endorsement at 2, ¶ A.1, Doc. No. 38-1, at 12.) Because the complaint does not state a claim against a John Doe defendant *or any other defendant* into whose shoes BITCO could step, the complaint fails to state a claim against BITCO either. Accord Brown v. Webb, No. 3:11-cv-00340, 2012 WL 398327, at *3 (M.D. Tenn. Feb. 7, 2012) (granting summary judgment to UM carrier where plaintiffs failed to assert a viable theory of liability against an uninsured motor vehicle owner or operator or to follow the procedure set forth in § 56-7-1206(b)).

Plaintiffs apparently believe that compliance with 56-7-1206(a) and their naming TRW as

a defendant is sufficient because BITCO "would either step in the shoes of a Defendant [i.e., TRW] or act in a role of representing themselves should the liable named Defendant [i.e., TRW] not have coverage or have sufficient coverage." (Doc. No. 53, at 8.) Elsewhere, Plaintiffs affirm that

> The Complaint does not allege any wrong doing by a "John Doe", and neither does any of TRW's or BITCO's Answers. The Plaintiffs put BITCO on notice as a UM/IM carrier under the provisions of Tenn. Code Ann. § 56-7-1206 (a). This was done to secure the Plaintiffs' ability to recover should Defendant TRW not have insurance or deny coverage. BITCO is not in this case as a defender of "John Doe". . . .

(Doc. No. 53, at 19.) Plaintiffs' arguments manifest a fundamental misunderstanding of the UM statute. The question of TRW's liability is totally separate and apart from that of BITCO, which, again, is contingent upon the liability of an uninsured motorist into whose shoes BITCO might have stepped. The Tennessee UM statute does not contemplate that BITCO would step into the shoes of TRW, the named defendant with respect to Plaintiffs' products-liability claims.

Finally, even if Plaintiffs wanted to amend their complaint to state a claim against the unidentified driver of the white SUV, for purposes of maintaining their UM claim against BITCO, it is too late to do so now. A negligence claim against an uninsured motorist is governed by Tennessee's one-year statute of limitations. Tenn. Code Ann. § 28-3-104(a)(1)(A). The Accident giving rise to Plaintiffs' claims took place on August 26, 2014. More than a year has passed since that date, so any claim against the John Doe driver of the white SUV would be barred by the statute of limitations, as would a claim against BITCO based on the actions of a John Doe defendant. Accord Brown v. Webb, 2012 WL 398327, at *3 (M.D. Tenn. Feb. 7, 2012); Lane v. Montgomery, 2007 WL 1860903 (Tenn. Ct. App. June 28, 2007) (holding that amended complaint naming "John Doe" was time-barred by Tenn. Code Ann. § 28-3-104 and did not "relate back" to the date of filing under Tenn. R. Civ. P. 15.03, even though the UM carrier had notice of the claim well before the

13

statute of limitations expired).

Regarding Plaintiffs' alternative argument that summary judgment is inappropriate in this case because discovery has not been conducted, the Court finds that discovery would not aid Plaintiffs' case against BITCO. The undisputed facts establish that BITCO is entitled to judgment in its favor as a matter of law.

**IV.     CONCLUSION**

For the reasons set forth herein, the Court will grant BITCO's motion for summary judgment and dismiss all claims against that unnamed defendant. This ruling does not affect Plaintiff's claims against defendant TRW.

An appropriate order is filed herewith.

*Todd Campbell*
TODD CAMPBELL
UNITED STATES DISTRICT JUDGE